**VIRGINIA:**

**IN THE CIRCUIT COURT FOR FAIRFAX COUNTY**

FILED
CIVIL DIVISION

11-12-2025

CL-2025-0009887

Christopher J. Falcon
CLERK, CIRCUIT COURT
FAIRFAX, VA

| | |
|---|---|
| **EMILY THOMAS,** | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| | ) |
| **FEDERAL HOME LOAN MORTGAGE** | ) |
| **CORPORATION,** | ) |
| | ) |
| **Serve: Greg Watchman, Esquire** | ) |
| **VP & Deputy General Counsel** | ) |
| **Freddie Mac** | ) |
| **8200 Jones Branch Drive** | ) |
| **McLean, Virginia 22102** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |
| | ) |

**Civil Case No. CL 2025-000-9887**

## FIRST AMENDED COMPLAINT

NOW COMES the plaintiff, Emily Thomas ("Plaintiff" or "Ms. Thomas"), by and through her undersigned counsel, Broderick C. Dunn, Esq., and the law firm of Dunn Craig & Francuzenko (formerly Cook Craig & Francuzenko, PLLC), for her First Amended Complaint against the defendant, Federal Home Loan Mortgage Corporation ("Defendant" or "Freddie Mac"), states as follows:

## INTRODUCTION

1.    This case is a civil action involving the Defendant's violations of Va. Code § 40.1-27.3, the Virginia Whistleblower Protection Law ("VWPL"); 42 U.S.C. § 2000e-2 of Title VII of

1

the Civil Rights Act of 1964 ("Title VII"); 42 U.S.C. § 12112 of the Americans with Disabilities Act ("ADA"); and Va. Code § 2.2-3900 *et seq.*, the Virginia Human Rights Act ("VHRA").

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to Va. Code § 8.01-328.1 because, among other reasons, Defendant resides and transacts business in the Commonwealth of Virginia.

2.      Venue is proper in this Court pursuant to Va. Code § 8.01-262 because, among other reasons, Plaintiff performed work for Defendant in Fairfax County.

## PARTIES

3.      Plaintiff is an adult female resident of the Commonwealth of Virginia. Plaintiff is Hispanic and identifies as mixed-race. Additionally, Plaintiff suffers from attention deficit hyperactivity disorder ("ADHD"). Plaintiff's ADHD substantially limits major life activities such as learning and working because it impacts her attention, focus, and impulsivity. As such, Plaintiff's ADHD is considered a disability under both the Americans with Disabilities Act ("ADA") and the Virginia Human Rights Act ("VHRA").

4.      Defendant is a Government Sponsored Enterprise (a private entity with a government charter) with its primary place of business in McLean, Virginia. Freddie Mac was created to promote a stable secondary mortgage market for residential mortgages and Defendant purchases mortgages from lenders across the country and either packages them into securities that can be sold to investors or retains the mortgages in its portfolio.

## FACTUAL BACKGROUND

5.      Defendant hired Plaintiff as a Compensation Associate in 2016.

6.      Defendant promoted Plaintiff to Securities Operations Professional in 2017.

2

7.     In 2019, Ms. Thomas transferred into Freddie Mac's Multifamily Data Governance and Management group as a Data Analytics Professional.

8.     Plaintiff's job performance met and exceeded Defendant's legitimate business expectations as evidenced by her promotions, tenure, and strong performance reviews.

9.     From 2019 through 2023, Defendant rated Plaintiff's performance as "Meets", "Solid Performer" or "Exceeds" and gave her numerous positive comments.

10.     In 2021, Plaintiff's supervisors praised her "can do" attitude, described her as a "quick learner," and also described her as an "excellent team player."

11.     In 2022, Plaintiff's supervisors said that she had a "great attitude" and described her as "a pleasure to have on the team."

12.     In 2023, Plaintiff's supervisors stated that she had a "positive attitude" and described her as "a strong team player."

13.     In March of 2022, Defendant promoted Plaintiff to Data Analytics Senior. Plaintiff began reporting to Margaret "Peggy" Smith ("Ms. Smith").

14.     Sometime in 2023, Ms. Thomas reported to Ms. Smith that she was being treated disparately based on her race and disabilities by a non-mixed race, non-neurodivergent colleague, Kathryn Coffey ("Ms. Coffey"), whom Ms. Smith also managed.  Instead of addressing Plaintiff's complaint, however, Ms. Smith began retaliating against Plaintiff.

15.     In January of 2024, Plaintiff sent a letter to Ms. Smith detailing mistreatment and discrimination that she was experiencing and had observed while in Defendant's employ. Their working relationship continued to deteriorate following that.

16.     Plaintiff received her 2023 performance review on March 4, 2024. Defendant gave Plaintiff a modest pay raise. When Ms. Thomas questioned the amount of her modest pay raise,

3

Ms. Smith became upset and told other employees that Plaintiff was being belligerent. Upon information and belief, Ms. Smith allowed other Freddie Mac employees, including neurotypical white men and women, to express dissatisfaction without labeling them angry or belligerent.

17.    Shortly after their March 4, 2024 meeting, Plaintiff engaged in protected activity by reporting Ms. Smith to Defendant's human resources department and Defendant's Ethics Department for race discrimination and for abuse of disabled employees.

18.    On April 18, 2024, Ms. Smith became verbally aggressive with Plaintiff during a one-on-one meeting. Upon information and belief, Ms. Smith behaved this way because Ms. Thomas engaged in protected activity by previously reporting Ms. Smith's behavior.

19.    Plaintiff reported Ms. Smith's disparate treatment and retaliation on the basis of Plaintiff's race and disability to Defendant's Vice President, Lauren Garren ("Ms. Garren").

20.    On April 22, 2024, Plaintiff engaged in protected activity again when she sent a follow up email to Defendant's human resources department regarding Ms. Smith.

21.    On April 23, 2024, Plaintiff engaged in protected activity by forwarding her January 2024 correspondence regarding Ms. Smith's mistreatment to Defendant's human resources department and referencing a "pattern of retaliation."

22.    On May 16, 2024, Plaintiff engaged in protected activity again when she sent an email to Ms. Garren, Ms. Smith, and other supervisors and human resources professionals at Freddie Mac. The May 16, 2024 Email is attached hereto as **Exhibit A**.

23.    In the May 16, 2024 Email, Plaintiff mentioned her status as a neurodivergent employee and also mentioned the discrimination that she was facing while in Defendant's employ.

24.    As a result of the May 16, 2024 Email, Defendant placed Plaintiff on administrative leave and eliminated Plaintiff's access to Defendant's intranet and her email address.

4

25.     Defendant terminated Plaintiff's employment on July 8, 2024 in retaliation for raising concerns about discrimination and other disparate treatment in violation of the ADA, the VHRA, and Title VII of the Civil Rights Act ("Title VII").

26.     As a result of Defendant's actions, Plaintiff has been damaged.

## COUNT I
### (Virginia Whistleblower Protection Law)

27.     Plaintiff restates and realleges the allegations contained in paragraphs 1 through 26 of the Complaint as if fully set forth herein.

28.     Plaintiff made good faith reports of Defendant's violations of state and federal equal employment opportunity laws such as Title VII, the ADA, and the VHRA to supervisors.

29.     Defendant responded to Plaintiff's protected activity by putting her on administrative leave and then terminating her employment shortly thereafter.

30.     As a result of Defendant's actions, Plaintiff has been damaged.

## COUNT II
### (Title VII Retaliation)

31.     Plaintiff restates and realleges the allegations contained in paragraphs 1 through 26 of the complaint as if fully set forth herein.

32.     Plaintiff is a disabled Hispanic individual who identifies as mixed race.

33.     Plaintiff engaged in protected activity when she reported Ms. Smith's disparate treatment and retaliation based on her race and disability and on April 23, 2024, when she forwarded email correspondence regarding Ms. Smith's mistreatment to Defendant's human resources.

34.    Plaintiff suffered a materially adverse employment action when she experienced mistreatment by Ms. Smith, and when she was placed on administrative leave and eventually terminated on July 8, 2024.

35.    There is a causal link between the adverse employment actions and Plaintiff's protected activity.

36.    As a result of Defendant's actions, Plaintiff has been damaged.

## COUNT III
### (ADA Retaliation)

37.    Plaintiff restates and realleges the allegations contained in paragraphs 1 through 26 of the complaint as if fully set forth herein.

38.    Plaintiff is a person with ADHD which is a condition that qualifies as disability under the ADA.

39.    Defendant had actual and constructive knowledge of Plaintiff's disabilities as a result of her reports regarding Ms. Smith's disparate treatment based on her disability.

40.    Defendant responded to Plaintiff's protected activity by taking adverse employment actions against her including placing her on administrative leave and terminating her.

41.    Defendant's adverse employment actions are causally related to Plaintiff's protected activity.

42.    As a result of Defendant's actions, Plaintiff has been damaged.

## COUNT IV
### (Retaliation Under the Virginia Human Rights Act, Va. Code § 2.2-3905)

43.    Plaintiff restates and realleges the allegations contained in paragraphs 1 through 26 of the complaint as if fully set forth herein.

44.    Plaintiff is a member of multiple protected classes under the VHRA.

6

45.    Pursuant to Va. Code § 2.2-3905(B)(1)(a), it is an unlawful discriminatory practice for an employer to "discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, condition, or privileges of employment because of such individual's race, color, religion, sex, sexual orientation, gender identity, marital status…or related medical conditions including lactation, age, military status, disability, or ethnic or national origin…"

46.    After making reports to human resources about disparate treatment that Plaintiff faced in the workplace, Defendant retaliated against Plaintiff by placing her on administrative leave and terminating her on July 8, 2024.

47.    As a result of the Defendant's actions, Plaintiff has been damaged.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Emily Thomas, respectfully requests that the Court enter judgment in her favor against the defendant, Federal Home Loan Mortgage Corporation, and grant the following relief:

A) Judgment against Defendant in the amount of $500,000 for violation of the VWPL;

B) Judgment against Defendant in the amount of $1,000,000, punitive damages in the amount of $300,000, and compensatory damages in the amount of $300,000 in violation of Title VII;

C) Judgment against Defendant in the amount of 1,000,000, punitive damages in the amount of $300,000, and compensatory damages in the amount of $300,00 in violation of the ADA;

D) Judgment against Defendant in the amount of $500,00, and punitive damages in the amount of $500,000 for violation of the VHRA;

E)  Plaintiff's reasonable attorneys' fees and costs as provided in Va. Code § 40.1-27.3(C);

    Title VII; the ADA; and the VHRA, and

F)  Such other further relief that the Court deems necessary and proper.

**<u>Jury Demand</u>**

Plaintiff hereby requests a trial by jury on all issues so triable.

EMILY THOMAS

By counsel: */s/ Broderick C. Dunn*

Broderick C. Dunn, VSB No. 74847
Dunn Craig & Francuzenko, PLLC
(Formerly Cook Craig & Francuzenko,
PLLC)
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
(703) 865-7480 Phone
(703) 434-3510 Fax
bdunn@dunncraig.com
*Counsel for Plaintiff Emily Thomas*

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of October 2025, a copy of the foregoing was served

via email and U.S. Mail, postage prepaid, to:

Greg Watchman, Esq.
8200 Jones Branch Drive
McLean, Virginia 22102
*VP & Deputy General Counsel*
*Freddie Mac*

*/s/ Broderick C. Dunn*

SPS

**COMMONWEALTH OF VIRGINIA**
**CIRCUIT COURT OF FAIRFAX**
**4110 CHAIN BRIDGE ROAD**
**FAIRFAX, VIRGINIA 22030**
**703-691-7320**
**(Press 3, Press 1)**

**Emily Thomas vs. Federal Home Loan**
**Mortgage Corporation**

**CASE NUMBER: CL-2025-0009887**

TO:   Greg Watchman, Esquire VP & Deputy General Counsel Freddie Mac
      8200 Jones Branch Drive
      McLean  VA 22102

**SUMMONS – CIVIL ACTION**

The party upon whom this summons and the attached complaint are served is hereby notified that unless within 21 days after such service, response is made by filing in the Clerk's office of this Court a pleading in writing, in proper legal form, the allegations and charges may be taken as admitted and the court may enter an order, judgment or decree against such party either by default or after hearing evidence.

**APPEARANCE IN PERSON IS NOT REQUIRED BY THIS SUMMONS.**

Done in the name of the Commonwealth of Virginia, on December 2, 2025.

CHRISTOPHER J. FALCON, CLERK

By: _____
              **Deputy Clerk**

Plaintiff's Attorney:  Broderick C. Dunn



AFD
CIVIL PROCESS

Sam Chism
Private Process Server
PO Box 1521
CENTREVILLE, VA 20122

703.764.0854 ■ 771.529.4998
SAMCHISM59@GMAIL.COM



RECEIVED
DEC 0 4 2025
By_____

E-FILED
07/07/2025 12:50:16
CL-2025-0009887

Christopher J. Falcon
CLERK, CIRCUIT COURT
FAIRFAX, VA

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR FAIRFAX COUNTY

| | |
|---|---|
| **EMILY THOMAS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | |
| ) | **Civil Case No._____** |
| ) | |
| **FEDERAL HOME LOAN MORTGAGE** ) | |
| **CORPORATION,** ) | |
| ) | |
| **Serve: Greg Watchman, Esquire** ) | |
|      **VP & Deputy General Counsel** ) | |
|      **Freddie Mac** ) | |
|      **8200 Jones Branch Drive** ) | |
|      **McLean, Virginia 22102** ) | |
| ) | |
|      **Defendant.** ) | |
| ) | |
| ) | |

## COMPLAINT

NOW COMES the plaintiff, Emily Thomas ("Plaintiff" or "Ms. Thomas"), by and through

her undersigned counsel, Broderick C. Dunn, Esq., Chandler A. Sensibaugh, Esq., and the law firm

of Cook Craig & Francuzenko, PLLC, for her Complaint against the defendant, Federal Home

Loan Mortgage Corporation ("Defendant" or "Freddie Mac"), states as follows:

## INTRODUCTION

1.     This case is a civil action involving the Defendant's violations of Va. Code § 40.1-

27.3, the Virginia Whistleblower Protection Law ("VWPL").

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to Va. Code § 8.01-328.1 because, among other reasons, Defendant resides and transacts business in the Commonwealth of Virginia.

2.      Venue is proper in this Court pursuant to Va. Code § 8.01-262 because, among other reasons, Plaintiff performed work for Defendant in Fairfax County.

## PARTIES

3.      Plaintiff is an adult female resident of the Commonwealth of Virginia. Plaintiff is Hispanic and identifies as mixed-race. Additionally, Plaintiff suffers from attention deficit hyperactivity disorder ("ADHD"). Plaintiff's ADHD substantially limits major life activities such as learning and working because it impacts her attention, focus, and impulsivity. As such, Plaintiff's ADHD is considered a disability under both the Americans with Disabilities Act ("ADA") and the Virginia Human Rights Act ("VHRA").

4.      Defendant is a Government Sponsored Enterprise (a private entity with a government charter) with its primary place of business in McLean, Virginia. Freddie Mac was created to promote a stable secondary mortgage market for residential mortgages and Defendant purchases mortgages from lenders across the country and either packages them into securities that can be sold to investors or retains the mortgages in its portfolio.

## FACTUAL BACKGROUND

5.      Defendant hired Plaintiff as a Compensation Associate in 2016.

6.      Defendant promoted Plaintiff to Securities Operations Professional in 2017.

7.      In 2019, Ms. Thomas transferred into Freddie Mac's Multifamily Data Governance and Management group as a Data Analytics Professional.

8.      Plaintiff's job performance met and exceeded Defendant's legitimate business expectations as evidenced by her promotions, tenure, and strong performance reviews.

9.      From 2019 through 2023, Defendant rated Plaintiff's performance as "Meets", "Solid Performer" or "Exceeds" and gave her numerous positive comments.

10.     In 2021, Plaintiff's supervisors praised her "can do" attitude, described her as a "quick learner," and also described her as an "excellent team player."

11.     In 2022, Plaintiff's supervisors said that she had a "great attitude" and described her as "a pleasure to have on the team."

12.     In 2023, Plaintiff's supervisors stated that she had a "positive attitude" and described her as "a strong team player."

13.     In March of 2022, Defendant promoted Plaintiff to Data Analytics Senior. Plaintiff began reporting to Margaret "Peggy" Smith ("Ms. Smith").

14.     Sometime in 2023, Ms. Thomas reported to Ms. Smith that she was being treated disparately by a non-mixed race, non-neurodivergent colleague, Kathryn Coffey ("Ms. Coffey"), whom Ms. Smith also managed.  Instead of addressing Plaintiff's complaint, however, Ms. Smith began retaliating against Plaintiff.

15.     In January of 2024, Plaintiff wrote a letter about mistreatment that she was experiencing and had observed while in Defendant's employ to Ms. Smith. Their working relationship continued to deteriorate following that.

16.     Plaintiff received her 2023 performance review on March 4, 2024. Defendant gave Plaintiff a modest pay raise. When Ms. Thomas questioned the amount of her modest pay raise, Ms. Smith became upset and told other employees that Plaintiff was being belligerent. Upon

3

information and belief, Ms. Smith allowed other Freddie Mac employees, including neurotypical

white men and women, to express dissatisfaction without labeling them angry or belligerent.

17.     Ms. Smith, as Plaintiff's supervisor, lowered Plaintiff's performance rating.

18.     Shortly after their March 4, 2024 meeting, Plaintiff reported Ms. Smith to

Defendant's human resources department and Defendant's Ethics Department for race

discrimination and for abuse of disabled employees.

19.     On April 18, 2024, Ms. Smith became verbally aggressive with Plaintiff during a

one on one meeting. Upon information and belief, Ms. Smith behaved this way because Ms.

Thomas engaged in protected activity by previously reporting Ms. Smith's behavior.

20.     Plaintiff reported Ms. Smith's disparate treatment and retaliation on the basis of

Plaintiff's race and disability to Defendant's Vice President, Lauren Garren ("Ms. Garren").

21.     On April 22, 2024, Plaintiff sent a follow up email to Defendant's human resources

department regarding Ms. Smith.

22.     On April 23, 2024, Plaintiff engaged in protected activity by forwarding her

January 2024 correspondence regarding Ms. Smith's mistreatment to Defendant's human

resources department and referenced a "pattern of retaliation."

23.     On May 16, 2024, Plaintiff engaged in protected activity again when she sent an

email to Ms. Garren, Ms. Smith, and other supervisors and human resources professionals at

Freddie Mac. The May 16, 2024 Email is attached hereto as **Exhibit A**.

24.     In the May 16, 2024 Email, Plaintiff mentioned her status as a neurodivergent

employee and also mentioned the discrimination that she was facing while in Defendant's employ.

25.     As a result of the May 16, 2024 Email, Defendant placed Plaintiff on administrative

leave and eliminated Plaintiff's access to Defendant's intranet and her email address.

4

26.    Defendant terminated Plaintiff's employment on July 8, 2024 in retaliation for raising concerns about discrimination and other disparate treatment in violation of the ADA, the VHRA, and Title VII of the Civil Rights Act ("Title VII").

27.    As a result of Defendant's actions, Plaintiff has been damaged.

## COUNT I

28.    Plaintiff restates and realleges the allegations contained in paragraphs 1-27 of the Complaint as if fully set forth herein.

29.    Plaintiff made good faith reports of Defendant's violations of state and federal equal employment opportunity laws such as Title VII, the ADA, and the VHRA to supervisors.

30.    Defendant responded to Plaintiff's protected activity by putting her on administrative leave and then terminating her employment shortly thereafter.

31.    As a result of Defendant's actions, Plaintiff has been damaged.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Emily Thomas, respectfully requests that the Court enter judgment in her favor against the defendant, Federal Home Loan Mortgage Corporation, and grant the following relief:

A) Judgment against Defendant in the amount of $500,000 for violation of the VWPL;

B) Plaintiff's reasonable attorneys' fees and costs as provided in Va. Code § 40.1-27.3 (C); and

C) Such other further relief that the Court deems necessary and proper.

## Jury Demand

Plaintiff hereby requests a trial by jury on all issues so triable.

EMILY THOMAS

By counsel: _____

Broderick C. Dunn, VSB No. 74847
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
(703) 865-7480 Phone
(703) 434-3510 Fax
bdunn@cookcraig.com
*Counsel for Plaintiff Emily Thomas*

**From:** Thomas, Emily <emily_thomas@freddiemac.com>
**Sent:** Thursday, May 16, 2024 10:19 AM
**To:** Garren, Lauren B. <lauren_garren@freddiemac.com>
**Cc:** Dowdall, Regan <regan_dowdall@freddiemac.com>; Smith, Peggy <peggy_smith@freddiemac.com>; Hinrichs, Sara <sara_hinrichs@freddiemac.com>; Myers, Marlissa <marlissa_myers@freddiemac.com>
**Subject:** RE: Meeting recap
**Importance:** High

Thank you @Garren, Lauren B. for recap, here are my takeaways:

1. Lauren – As I stated in my initial email. I was asked to meet under false pretenses. Constructive criticism should not start with an action of deceit. This does not create a trustworthy environment to have constructive conversations.

2. Lauren – In the meeting you said this was a "conversation". I interpret a conversation with someone as using active listening skills, reiterating and a back-and-forth discussion. During this conversation every question I asked was taken as a challenge rather than listening to what I was saying so we could engage in a productive conversation.

3. Lauren – You are all aware of my disability. Yet it does not seem like any of you have taken the time to research neurodivergence and how we communicate differently. I encourage you all to look at the resources below around this. **Please I beg you all, if not for me for others like me that you do not take the time to get to know and understand.** It is hurtful that you are attempting to label my behavior as disruptive and against the code of conduct when these are VERY normal characteristics of my disability.

4. Lauren – where was your obligation to treating me with respect and dignity? I am once again being labeled by my own leadership team who refuse to educate themselves around their own employees' disease. It feels as if HR and my leadership team are engaging in bully like behavior toward neurodivergent employee and are unwilling to create a safe work environment so they can SAFELY be understood. It feels as if HR and my leadership team are attempting to create a narrative that I am a threat in the workplace which is not the case. I am concerned with HRs and my leadership understanding of what a safe work environment is for a neurodivergent employee. I am also concerned that my leadership team does not understand how to utilize active listening and is instead prioritizing tone policing.

## Discrimination

Workplace discrimination is a leading cause of concern for neurodiverse employees. The stigmas attached to cognitive disabilities cloud the judgment of existing employees and lead to direct discrimination. Interestingly, people believe they understand neurodiversity, but their views are based on outdated beliefs and stereotypes.

Did you know that almost 75% of neurodivergent workers hide their condition because of fear of discrimination? Of the remaining 25% who disclose their condition at work, half of them regret their decision later on.

### How to be inclusive

- Present information summarised in point form, and send out reminders if possible
- Back up verbal information with written
- Consider environment – avoid background noise if possible such as ticking clocks, or strong smells.
- Provide clear invitation to meetings detailing who will be present, what is to be expected with time and location.
- Be tolerant of stimming (fidgeting with something or repetitive actions or movements to allow focus).
- Understand that everyone is different, and needs fluctuate. Just because something is working one week, doesn't mean it will do the next.
- Consider the persons individual communication needs, and adapt! For example no cold calling, time of day.
- Think about language – ask the person what language they prefer eg autistic, person with autism
- Recognise that a reluctance to engage socially does not imply dislike or rudeness
- Normalise – talk about it and reduce the stigma. Remember, the phrase is different, not less and most importantly – the person is best placed to tell you about their strengths and needs and how you can adapt


EXHIBIT
A

## Communication tips

In order for neurodivergent individuals to be able to work with and understand safeguarding

. Avoiding sarcasm or ambiguity

. Being clear and using short, concise sentences

. Incorporating a visual element, such as diagrams or org charts, when appropriate

. Using closed rather than open questions to provide clarity

. Providing regular updates, especially when announcements concern changes to ways of working that may affect staff on a daily basis

I hope all of your daughters are put through what you have put me through.

https://powertofly.com/up/5-ways-to-support-neurodivergent-employees-in-the-workplace
https://diversejobsmatter.co.uk/blog/best-practices-for-supporting-neurodiverse-employees-in-the-workplace/

Thank you,

**Emily Thomas**
Pronouns: She/Her

Multifamily Data
(703)-918-5214
8100 Jones Branch Drive
McLean VA 22101

"Where there is data smoke, there is business fire." — Thomas Redman



E-FILED
10/29/2025 13:37:02
CL-2025-0009887

Christopher J. Falcon
CLERK, CIRCUIT COURT
FAIRFAX, VA

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR FAIRFAX COUNTY

| | |
|---|---|
| **EMILY THOMAS,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| | ) **Civil Case No. CL -2025-0009887** |
| | ) |
| **FEDERAL HOME LOAN MORTGAGE** | ) |
| **CORPORATION,** | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |

## MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiff Emily Thomas ("Plaintiff' Or "Ms. Thomas"), by and through undersigned counsel, pursuant to Va. Sup. Ct. R. 1:8, files this Motion for Leave to File an Amended Complaint. In support of her Motion, Plaintiff states as follows:

1.    Plaintiff filed her initial Complaint against Defendant on or about July 7, 2025 to preserve the statute of limitations on her claims pursuant to Va. Code § 40.1-27.3.

2.    Plaintiff has not served the Complaint on Defendant.

3.    Plaintiff recently exhausted her administrative remedies on her remaining claims against Defendant with the Virginia Office of Civil Rights and the Equal Employment Opportunity Commission.

4.    In the interest of promoting judicial economy, Plaintiff seeks to amend her original Complaint to add additional claims against Defendant.

5.    Plaintiff's proposed First Amended Complaint is attached hereto as **Exhibit A**.

6.    A proposed order is attached.

Plaintiff Emily Thomas respectfully requests that this Court grant her Motion for Leave to File First Amended Complaint and such other further relief as the Court deems necessary and proper.

Dated: October 29, 2025                    Respectfully submitted,

                                           */s/ Broderick C. Dunn*
                                           Broderick C. Dunn (VSB No. 74847)
                                           Dunn Craig & Francuzenko, PLLC
                                           (Formerly Cook Craig & Francuzenko, PLLC)
                                           3050 Chain Bridge Road, Suite 200
                                           Fairfax, VA 22030
                                           (T) (703) 865-7480
                                           (F) (703) 434-3510
                                           bdunn@dunncraig.com
                                           *Counsel for Plaintiff Emily Thomas*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of October 2025, a true and accurate copy of the

foregoing was served by regular mail and electronic mail to:

> Greg Watchman, Esquire
> VP & Deputy General Counsel
> Freddie Mac
> 8200 Jones Branch Drive
> McLean, Virginia 22102

*/s/ Broderick C. Dunn*

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR FAIRFAX COUNTY

|  |  |
|---|---|
| **EMILY THOMAS,** | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) **Civil Case No. CL -2025-0009887** |
| **FEDERAL HOME LOAN MORTGAGE CORPORATION,** | ) |
| Defendant. | ) |

### ORDER

THIS DAY CAME the Plaintiff, Emily Thomas, by counsel, and respectfully moved this Court for leave to file an Amended Complaint.

Upon consideration of the filings of counsel, this Court grants the Motion to Amend, and

HEREBY ORDER the Defendant to file responsive pleadings to the Amended Complaint within twenty-one (21) days from the date of entry of this Order.

Entered this _____ day of _____, 2025.

_____
Judge, Fairfax County Circuit Court

WE ASK FOR THIS:

_____

Broderick C. Dunn, VSB No. 74847
Dunn Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
(703) 865-7480 Phone
(703) 434-3510 Fax
bdunn@dunncraig.com
*Counsel for Plaintiff Emily Thomas*

# EXHIBIT

# A

**VIRGINIA:**

## IN THE CIRCUIT COURT FOR FAIRFAX COUNTY

| | |
|---|---|
| **EMILY THOMAS,** )<br><br>Plaintiff, )<br><br>v. )<br><br>)<br>)<br>**FEDERAL HOME LOAN MORTGAGE**<br>**CORPORATION,** )<br><br>)<br>**Serve: Greg Watchman, Esquire** )<br>**VP & Deputy General Counsel** )<br>**Freddie Mac** )<br>**8200 Jones Branch Drive** )<br>**McLean, Virginia 22102** )<br><br>Defendant. )<br>) | **Civil Case No. CL 2025-000-9887** |

## FIRST AMENDED COMPLAINT

NOW COMES the plaintiff, Emily Thomas ("Plaintiff" or "Ms. Thomas"), by and through

her undersigned counsel, Broderick C. Dunn, Esq., and the law firm of Dunn Craig & Francuzenko

(formerly Cook Craig & Francuzenko, PLLC), for her First Amended Complaint against the

defendant, Federal Home Loan Mortgage Corporation ("Defendant" or "Freddie Mac"), states as

follows:

## INTRODUCTION

1.      This case is a civil action involving the Defendant's violations of Va. Code § 40.1-

27.3, the Virginia Whistleblower Protection Law ("VWPL"); 42 U.S.C. § 2000e-2 of Title VII of

1

the Civil Rights Act of 1964 ("Title VII"); 42 U.S.C. § 12112 of the Americans with Disabilities Act ("ADA"); and Va. Code § 2.2-3900 *et seq.*, the Virginia Human Rights Act ("VHRA").

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over this matter pursuant to Va. Code § 8.01-328.1 because, among other reasons, Defendant resides and transacts business in the Commonwealth of Virginia.

2.     Venue is proper in this Court pursuant to Va. Code § 8.01-262 because, among other reasons, Plaintiff performed work for Defendant in Fairfax County.

## PARTIES

3.     Plaintiff is an adult female resident of the Commonwealth of Virginia. Plaintiff is Hispanic and identifies as mixed-race. Additionally, Plaintiff suffers from attention deficit hyperactivity disorder ("ADHD"). Plaintiff's ADHD substantially limits major life activities such as learning and working because it impacts her attention, focus, and impulsivity. As such, Plaintiff's ADHD is considered a disability under both the Americans with Disabilities Act ("ADA") and the Virginia Human Rights Act ("VHRA").

4.     Defendant is a Government Sponsored Enterprise (a private entity with a government charter) with its primary place of business in McLean, Virginia. Freddie Mac was created to promote a stable secondary mortgage market for residential mortgages and Defendant purchases mortgages from lenders across the country and either packages them into securities that can be sold to investors or retains the mortgages in its portfolio.

## FACTUAL BACKGROUND

5.     Defendant hired Plaintiff as a Compensation Associate in 2016.

6.     Defendant promoted Plaintiff to Securities Operations Professional in 2017.

2

7.      In 2019, Ms. Thomas transferred into Freddie Mac's Multifamily Data Governance and Management group as a Data Analytics Professional.

8.      Plaintiff's job performance met and exceeded Defendant's legitimate business expectations as evidenced by her promotions, tenure, and strong performance reviews.

9.      From 2019 through 2023, Defendant rated Plaintiff's performance as "Meets", "Solid Performer" or "Exceeds" and gave her numerous positive comments.

10.     In 2021, Plaintiff's supervisors praised her "can do" attitude, described her as a "quick learner," and also described her as an "excellent team player."

11.     In 2022, Plaintiff's supervisors said that she had a "great attitude" and described her as "a pleasure to have on the team."

12.     In 2023, Plaintiff's supervisors stated that she had a "positive attitude" and described her as "a strong team player."

13.     In March of 2022, Defendant promoted Plaintiff to Data Analytics Senior. Plaintiff began reporting to Margaret "Peggy" Smith ("Ms. Smith").

14.     Sometime in 2023, Ms. Thomas reported to Ms. Smith that she was being treated disparately based on her race and disabilities by a non-mixed race, non-neurodivergent colleague, Kathryn Coffey ("Ms. Coffey"), whom Ms. Smith also managed.  Instead of addressing Plaintiff's complaint, however, Ms. Smith began retaliating against Plaintiff.

15.     In January of 2024, Plaintiff sent a letter to Ms. Smith detailing mistreatment and discrimination that she was experiencing and had observed while in Defendant's employ. Their working relationship continued to deteriorate following that.

16.     Plaintiff received her 2023 performance review on March 4, 2024. Defendant gave Plaintiff a modest pay raise. When Ms. Thomas questioned the amount of her modest pay raise,

3

Ms. Smith became upset and told other employees that Plaintiff was being belligerent. Upon information and belief, Ms. Smith allowed other Freddie Mac employees, including neurotypical white men and women, to express dissatisfaction without labeling them angry or belligerent.

17.     Shortly after their March 4, 2024 meeting, Plaintiff engaged in protected activity by reporting Ms. Smith to Defendant's human resources department and Defendant's Ethics Department for race discrimination and for abuse of disabled employees.

18.     On April 18, 2024, Ms. Smith became verbally aggressive with Plaintiff during a one-on-one meeting. Upon information and belief, Ms. Smith behaved this way because Ms. Thomas engaged in protected activity by previously reporting Ms. Smith's behavior.

19.     Plaintiff reported Ms. Smith's disparate treatment and retaliation on the basis of Plaintiff's race and disability to Defendant's Vice President, Lauren Garren ("Ms. Garren").

20.     On April 22, 2024, Plaintiff engaged in protected activity again when she sent a follow up email to Defendant's human resources department regarding Ms. Smith.

21.     On April 23, 2024, Plaintiff engaged in protected activity by forwarding her January 2024 correspondence regarding Ms. Smith's mistreatment to Defendant's human resources department and referencing a "pattern of retaliation."

22.     On May 16, 2024, Plaintiff engaged in protected activity again when she sent an email to Ms. Garren, Ms. Smith, and other supervisors and human resources professionals at Freddie Mac. The May 16, 2024 Email is attached hereto as **Exhibit A**.

23.     In the May 16, 2024 Email, Plaintiff mentioned her status as a neurodivergent employee and also mentioned the discrimination that she was facing while in Defendant's employ.

24.     As a result of the May 16, 2024 Email, Defendant placed Plaintiff on administrative leave and eliminated Plaintiff's access to Defendant's intranet and her email address.

4

25.     Defendant terminated Plaintiff's employment on July 8, 2024 in retaliation for raising concerns about discrimination and other disparate treatment in violation of the ADA, the VHRA, and Title VII of the Civil Rights Act ("Title VII").

26.      As a result of Defendant's actions, Plaintiff has been damaged.

**COUNT I**
**(Virginia Whistleblower Protection Law)**

27.     Plaintiff restates and realleges the allegations contained in paragraphs 1 through 26 of the Complaint as if fully set forth herein.

28.     Plaintiff made good faith reports of Defendant's violations of state and federal equal employment opportunity laws such as Title VII, the ADA, and the VHRA to supervisors.

29.     Defendant responded to Plaintiff's protected activity by putting her on administrative leave and then terminating her employment shortly thereafter.

30.     As a result of Defendant's actions, Plaintiff has been damaged.

**COUNT II**
**(Title VII Retaliation)**

31.     Plaintiff restates and realleges the allegations contained in paragraphs 1 through 26 of the complaint as if fully set forth herein.

32.     Plaintiff is a disabled Hispanic individual who identifies as mixed race.

33.     Plaintiff engaged in protected activity when she reported Ms. Smith's disparate treatment and retaliation based on her race and disability and on April 23, 2024, when she forwarded email correspondence regarding Ms. Smith's mistreatment to Defendant's human resources.

5

34.    Plaintiff suffered a materially adverse employment action when she experienced mistreatment by Ms. Smith, and when she was placed on administrative leave and eventually terminated on July 8, 2024.

35.    There is a causal link between the adverse employment actions and Plaintiff's protected activity.

36.    As a result of Defendant's actions, Plaintiff has been damaged.

## COUNT III
## (ADA Retaliation)

37.    Plaintiff restates and realleges the allegations contained in paragraphs 1 through 26 of the complaint as if fully set forth herein.

38.    Plaintiff is a person with ADHD which is a condition that qualifies as disability under the ADA.

39.    Defendant had actual and constructive knowledge of Plaintiff's disabilities as a result of her reports regarding Ms. Smith's disparate treatment based on her disability.

40.    Defendant responded to Plaintiff's protected activity by taking adverse employment actions against her including placing her on administrative leave and terminating her.

41.    Defendant's adverse employment actions are causally related to Plaintiff's protected activity.

42.    As a result of Defendant's actions, Plaintiff has been damaged.

## COUNT IV
## (Retaliation Under the Virginia Human Rights Act, Va. Code § 2.2-3905)

43.    Plaintiff restates and realleges the allegations contained in paragraphs 1 through 26 of the complaint as if fully set forth herein.

44.    Plaintiff is a member of multiple protected classes under the VHRA.

6

45.    Pursuant to Va. Code § 2.2-3905(B)(1)(a), it is an unlawful discriminatory practice for an employer to "discharge, or otherwise discriminate against any individual with respect to such individual's compensation, terms, condition, or privileges of employment because of such individual's race, color, religion, sex, sexual orientation, gender identity, marital status…or related medical conditions including lactation, age, military status, disability, or ethnic or national origin…"

46.    After making reports to human resources about disparate treatment that Plaintiff faced in the workplace, Defendant retaliated against Plaintiff by placing her on administrative leave and terminating her on July 8, 2024.

47.    As a result of the Defendant's actions, Plaintiff has been damaged.

## **PRAYER FOR RELIEF**

WHEREFORE, the plaintiff, Emily Thomas, respectfully requests that the Court enter judgment in her favor against the defendant, Federal Home Loan Mortgage Corporation, and grant the following relief:

A) Judgment against Defendant in the amount of $500,000 for violation of the VWPL;

B) Judgment against Defendant in the amount of $1,000,000, punitive damages in the amount of $300,000, and compensatory damages in the amount of $300,000 in violation of Title VII;

C) Judgment against Defendant in the amount of 1,000,000, punitive damages in the amount of $300,000, and compensatory damages in the amount of $300,00 in violation of the ADA;

D) Judgment against Defendant in the amount of $500,00, and punitive damages in the amount of $500,000 for violation of the VHRA;

7

E) Plaintiff's reasonable attorneys' fees and costs as provided in Va. Code § 40.1-27.3(C);

    Title VII; the ADA; and the VHRA, and

F) Such other further relief that the Court deems necessary and proper.

### Jury Demand

Plaintiff hereby requests a trial by jury on all issues so triable.


EMILY THOMAS


By counsel: */s/ Broderick C. Dunn*


Broderick C. Dunn, VSB No. 74847
Dunn Craig & Francuzenko, PLLC
(Formerly Cook Craig & Francuzenko,
PLLC)
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
(703) 865-7480 Phone
(703) 434-3510 Fax
bdunn@dunncraig.com
*Counsel for Plaintiff Emily Thomas*

8

## CERTIFICATE OF SERVICE

I hereby certify that on the 29th day of October 2025, a copy of the foregoing was served

via email and U.S. Mail, postage prepaid, to:

Greg Watchman, Esq.
8200 Jones Branch Drive
McLean, Virginia 22102
*VP & Deputy General Counsel*
*Freddie Mac*

/s/ Broderick C. Dunn

From: Thomas, Emily <emily_thomas@freddiemac.com>
Sent: Thursday, May 16, 2024 10:19 AM
To: Garren, Lauren B. <lauren_garren@freddiemac.com>
Cc: Dowdall, Regan <regan_dowdall@freddiemac.com>; Smith, Peggy <peggy_smith@freddiemac.com>; Hinrichs, Sara <sara_hinrichs@freddiemac.com>; Myers, Marlissa <marlissa_myers@freddiemac.com>
Subject: RE: Meeting recap
Importance: High

Thank you @Garren, Lauren B. for recap, here are my takeaways:

1. Lauren – As I stated in my initial email, I was asked to meet under false pretenses. Constructive criticism should not start with an action of deceit. This does not create a trustworthy environment to have constructive conversations.

2. Lauren – In the meeting you said this was a "conversation". I interpret a conversation with someone as using active listening skills, reiterating and a back-and-forth discussion. During this conversation every question I asked was taken as a challenge rather than listening to what I was saying so we could engage in a productive conversation.
3. Lauren – You are all aware of my disability. Yet it does not seem like any of you have taken the time to research neurodivergence and how we communicate differently. I encourage you all to look at the resources below around this. **Please I beg you all, if not for me for others like me that you do not take the time to get to know and understand.** It is hurtful that you are attempting to label my behavior as disruptive and against the code of conduct when these are VERY normal characteristics of my disability.
4. Lauren – where was your obligation to treating me with respect and dignity? I am once again being labeled by my own leadership team who refuse to educate themselves around their own employees' disease. It feels as if HR and my leadership team are engaging in bully like behavior toward neurodivergent employee and are unwilling to create a safe work environment so they can SAFELY be understood. It feels as if HR and my leadership team are attempting to create a narrative that I am a threat in the workplace which is not the case. I am concerned with HRs and my leadership understanding of what a safe work environment is for a neurodivergent employee. I am also concerned that my leadership team does not understand how to utilize active listening and is instead prioritizing tone policing.

## Discrimination

Workplace discrimination is a leading cause of concern for neurodivergent employees. The stigma attached to cognitive disabilities lead the judgment of existing employees and lead to direct discrimination. Interestingly, people believe they understand neurodiversity, but their views are based on outdated beliefs and stereotypes.

Did you know that almost 75% of neurodivergent workers hide their condition because of fear of discrimination? Of the remaining 25% who disclose them, around one in work, half of them regret their decision later on.

### How to be inclusive

- Present information summarised in point form, and send out reminders if possible
- Back up verbal information with written
- Consider environment – avoid background noise if possible such as ticking clocks, or strong smells.
- Provide clear invitation to meetings detailing who will be present, what is to be expected with time and location.
- Be tolerant of stimming (fidgeting with something or repetitive actions or movements to allow focus).
- Understand that everyone is different, and needs fluctuate. Just because something is working one week, doesn't mean it will do the next.
- Consider the persons individual communication needs, and adapt! For example no cold calling, time of day
- Think about language – ask the person what language they prefer eg autistic, person with autism
- Recognise that a reluctance to engage socially does not imply dislike or rudeness.
- Normalise – talk about it and reduce the stigma. Remember, the phrase is different, not less and most importantly – the person is best placed to tell you about their strengths and needs and how you can adapt


EXHIBIT
A

## Communication tips

In order for neurodivergent individuals to be able to work with and understand safeguarding

. Avoiding sarcasm or ambiguity

. Being clear and using short, concise sentences

. Incorporating a visual element, such as diagrams or org charts, when appropriate

. Using closed rather than open questions to provide clarity

. Providing regular updates, especially when announcements concern changes to ways of working that may affect staff on a daily basis

I hope all of your daughters are put through what you have put me through.

https://powertofly.com/up/5-ways-to-support-neurodivergent-employees-in-the-workplace
https://diversejobsmatter.co.uk/blog/best-practices-for-supporting-neurodiverse-employees-in-the-workplace/

Thank you,

**Emily Thomas**
Pronouns: She/Her

Multifamily Data
(703)-918-5214
8100 Jones Branch Drive
McLean VA 22101

"Where there is data smoke, there is business fire." -- Thomas Redman



Freddie Mac

E-FILED
10/31/2025 14:50:42
CL-2025-0009887
Christopher J. Falcon
CLERK, CIRCUIT COURT
FAIRFAX, VA

**VIRGINIA:    IN THE CIRCUIT COURT OF FAIRFAX COUNTY**

Emily Thomas
_____
                              **Plaintiff**
                                 **vs.**                                     **Civil Action No.** CL 2025-0009887

Federal Home Loan Mortgage Corporation                **Previous Chancery No.** **CH**
_____
                              **Defendant**
**SERVE:**

## FRIDAY MOTIONS DAY – PRAECIPE/NOTICE

**Moving Party:** ☒ Plaintiff   ☐ Defendant   ☐ Other

**Title of Motion:** Motion for Leave to File Amended Complaint         ☐ Attached   ☒ Previously Filed

**DATE TO BE HEARD:** November 14, 2025       **Time Estimate** (combined no more than 30 minutes): 5 minutes

**Time to be Heard:**   ☐ 9:00 a.m. **with** a Judge

☒ 10:00 a.m. (Civil Action Cases)  Does this motion require 2 weeks notice?  ☐ Yes  ☒ No

☐ 11:30 a.m. (DOMESTIC/Family Law Cases)  Does this motion require 2 weeks notice?  ☐ Yes  ☐ No

**Case continued from:** _____  **continued to:** _____
                              (Date)                                          (Date)

Judge _____ **must** hear this motion because (check one reason below):

☐ The matter is on the docket for presentation of an order reflecting a specific ruling previously made by that Judge.
☐ This Judge has been assigned to this entire case by the Chief Judge; or,
☐ The Judge has advised counsel that all future motions, or this specific motion, should be placed on this Judge's Docket; or,
☐ This matter concerns a demurrer filed in a case where that Judge previously granted a demurrer in favor of demurrant.

**PRAECIPE** by: Broderick C. Dunn                    Dunn Craig & Francuzenko, PLLC
                Printed Attorney Name/ Moving Party Name              Firm Name

3050 Chain Bridge Road, Suite 200, Fairfax, Virginia 22030
_____
                              Address

7038657480          7034343510          74847          bdunn@dunncraig.com
Tel. No.                Fax No.               VSB No.          E-Mail Address

### CERTIFICATIONS

I certify that I have in good faith conferred or attempted to confer with other affected parties in an effort to resolve the subject of the motion without Court action, pursuant to Rule 4:15(b) of the Rules of the Supreme Court of Virginia; and, I have read, _and_ complied with, each of the Instructions for Moving Party on the reverse side of this form.

_____
                              Moving Party/Counsel of Record

### CERTIFICATE OF SERVICE

I certify on the 31 day of October , 2025 , a true copy of the foregoing Praecipe was

☒ mailed ☐ faxed ☐ delivered to all counsel of record pursuant to the provisions of Rule 4:15(e) of the Rules of the Supreme Court of Virginia.

_____
                              Moving Party/Counsel of Record

CCR-E-10 (July 2021)

## INSTRUCTIONS FOR MOVING PARTY

**DATE/TIME**: All motions should be noticed for the 10:00 a.m. Civil Action Docket or the 11:30 a.m. Domestic/Family Law Docket (All Divorce cases, adoptions and Juvenile & Domestic Relations Court Appeals) unless the moving party believes the motion will be uncontested. All motions believed to be uncontested should be noticed for 9:00 a.m.. **A minimum of two weeks' notice is required for all motions for Summary Judgment, Demurrers, Pleas in Bar, motions pertaining to discovery disputes and other motions for which any party desires to file a memorandum.** A memorandum of points and authorities of five pages or less must accompany any of these pleadings and any other motion placed on the Two-Week Docket. If either party believes it necessary to file a memorandum exceeding five double-spaced pages, then the parties must utilize the Briefing Schedule procedure: contact opposing counsel or the opposing party and by agreement conduct a telephone conference call with the Calendar Control Judge, (703) 246-2221; or, if agreement is not possible, give advance notice of an appearance before the Calendar Control Judge to establish a Briefing Schedule.

**Each side should bring a draft proposed order to Court on the day of the hearing, as the ruling must be reduced to an order that day, absent leave of Court.** Cases may only be removed from the docket by the Court or by counsel for the moving party or the moving party. One Week Motions may be removed from the docket up until 4:00 p.m. on the Thursday preceding the hearing date, by contacting the Motions Clerk: (703) 246-4355. Two Week Motions may not be continued or removed from the docket after 4:00 p.m. on the Friday preceding the hearing date, without leave granted by the Judge assigned to hear the motion, for good cause shown.

If a hearing on any motion must take longer than thirty (30) minutes, the moving and responding parties, or their counsel, should appear before the Calendar Control Judge to request a hearing for a day other than a Friday. See, "Motions Requiring More than 30 Minutes" in "Friday Motions Docket Procedures" on the Court's website at https://www.fairfaxcounty.gov/circuit/sites/circuit/files/assets/documents/pdf/civil-friday-motions-docket-procedures.pdf

**MOTIONS TO RECONSIDER:** Do not set a Motion to Reconsider for a hearing. (See Friday Motions Docket Procedures, available from the Clerk's Office, the Bar Association office or on the Court's website at the address above.

**CERTIFICATIONS OF MOVING PARTY/COUNSEL**: Rule 4:15 (b) of the Rules of the Supreme Court of Virginia provides in pertinent part that "Absent leave of court, and except as provided in paragraph (c) of this Rule, reasonable notice shall be in writing and served at least seven days before the hearing. Counsel of record shall make a reasonable effort to confer before giving notice of a motion to resolve the subject of the motion **and to determine a mutually agreeable hearing date and time.**"

**CERTIFICATE OF SERVICE**: Pursuant to Rule 4:15 (e), a motions pleading shall be deemed served when it is actually received by, or in the office of, counsel of record through delivery, mailing, or facsimile transmission; not when it is mailed or sent.

## INFORMATION FOR MOVING PARTY

**CONCILIATION PROGRAM**: The Fairfax Circuit Court strongly encourages use of conciliation procedures to resolve motions. The Fairfax Bar Association's Conciliation Program conducts conciliation without charge by experienced litigators, who meet in person or by telephone with all interested parties. To request conciliation, fax a Request for Conciliation form to the Fax Hotline, (703) 273-1274; e-mail a request for conciliation to: ffxconciliation@aol.com; or leave a voice mail message at (703) 627-1228. You will be contacted before the hearing date by a representative of the Conciliation Program.

CCR-E-10 (July 2021)

E-FILED
10/31/2025 15:17:39
CL-2025-0009887
Christopher J. Falcon
CLERK, CIRCUIT COURT
FAIRFAX, VA

**V I R G I N I A :    IN THE CIRCUIT COURT OF FAIRFAX COUNTY**

Emily Thomas
_____
**Plaintiff**

vs.                                                        Civil Action No.  CL 2025-0009887

Federal Home Loan Mortgage Corporation                Previous Chancery No.  CH _____
_____
**Defendant**

**SERVE:**

## FRIDAY MOTIONS DAY – PRAECIPE/NOTICE

**Moving Party:**  ☒ Plaintiff    ☐ Defendant    ☐ Other

**Title of Motion:** Motion for Leave to File Amended Complaint    ☐ Attached  ☒ Previously Filed

**DATE TO BE HEARD:** November 14, 2025    **Time Estimate** (combined no more than 30 minutes): 5 minutes

**Time to be Heard:**    ☐ 9:00 a.m. **with** a Judge

☒ 10:00 a.m. (Civil Action Cases)  Does this motion require 2 weeks notice? ☒ Yes  ☐ No

☐ 11:30 a.m. (DOMESTIC/Family Law Cases) Does this motion require 2 weeks notice? ☐ Yes  ☐ No

**Case continued from:** _____        **continued to:** _____
                              (Date)                                    (Date)

Judge _____ **must** hear this motion because (check one reason below):

☐ The matter is on the docket for presentation of an order reflecting a specific ruling previously made by that Judge.
☐ This Judge has been assigned to this entire case by the Chief Judge; or,
☐ The Judge has advised counsel that all future motions, or this specific motion, should be placed on this Judge's Docket; or,
☐ This matter concerns a demurrer filed in a case where that Judge previously granted a demurrer in favor of demurrant.

**PRAECIPE by:** Broderick C. Dunn            Dunn Craig & Francuzenko, PLLC
                Printed Attorney Name/ Moving Party Name                Firm Name

3050 Chain Bridge Road, Suite 200, Fairfax, Virginia 22030
_____
                                    Address

7038657480          7034343510          74847        bdunn@dunncraig.com
   Tel. No.              Fax No.           VSB No.          E-Mail Address

### CERTIFICATIONS

I certify that I have in good faith conferred or attempted to confer with other affected parties in an effort to resolve the subject of the motion without Court action, pursuant to Rule 4:15(b) of the Rules of the Supreme Court of Virginia; and, I have read, and complied with, each of the Instructions for Moving Party on the reverse side of this form.

_____
                Moving Party/Counsel of Record

### CERTIFICATE OF SERVICE

I certify on the 31 day of October , 2025 , a true copy of the foregoing Praecipe was

☒ mailed  ☐ faxed  ☐ delivered to all counsel of record pursuant to the provisions of Rule 4:15(e) of the Rules of the Supreme Court of Virginia.

_____
                Moving Party/Counsel of Record

CCR-E-10 (July 2021)

# INSTRUCTIONS FOR MOVING PARTY

**DATE/TIME:** All motions should be noticed for the 10:00 a.m. Civil Action Docket or the 11:30 a.m. Domestic/Family Law Docket (All Divorce cases, adoptions and Juvenile & Domestic Relations Court Appeals) unless the moving party believes the motion will be uncontested. All motions believed to be uncontested should be noticed for 9:00 a.m.. **A minimum of two weeks' notice is required for all motions for Summary Judgment, Demurrers, Pleas in Bar, motions pertaining to discovery disputes and other motions for which any party desires to file a memorandum.** A memorandum of points and authorities of five pages or less must accompany any of these pleadings and any other motion placed on the Two-Week Docket. If either party believes it necessary to file a memorandum exceeding five double-spaced pages, then the parties must utilize the Briefing Schedule procedure: contact opposing counsel or the opposing party and by agreement conduct a telephone conference call with the Calendar Control Judge, (703) 246-2221; or, if agreement is not possible, give advance notice of an appearance before the Calendar Control Judge to establish a Briefing Schedule.

**Each side should bring a draft proposed order to Court on the day of the hearing, as the ruling must be reduced to an order that day, absent leave of Court.** Cases may only be removed from the docket by the Court or by counsel for the moving party or the moving party. One Week Motions may be removed from the docket up until 4:00 p.m. on the Thursday preceding the hearing date, by contacting the Motions Clerk: (703) 246-4355. Two Week Motions may not be continued or removed from the docket after 4:00 p.m. on the Friday preceding the hearing date, without leave granted by the Judge assigned to hear the motion, for good cause shown.

If a hearing on any motion must take longer than thirty (30) minutes, the moving and responding parties, or their counsel, should appear before the Calendar Control Judge to request a hearing for a day other than a Friday. See, "Motions Requiring More than 30 Minutes" in "Friday Motions Docket Procedures" on the Court's website at https://www.fairfaxcounty.gov/circuit/sites/circuit/files/assets/documents/pdf/civil-friday-motions-docket-procedures.pdf

**MOTIONS TO RECONSIDER:** Do not set a Motion to Reconsider for a hearing. (See Friday Motions Docket Procedures, available from the Clerk's Office, the Bar Association office or on the Court's website at the address above.

**CERTIFICATIONS OF MOVING PARTY/COUNSEL:** Rule 4:15 (b) of the Rules of the Supreme Court of Virginia provides in pertinent part that "Absent leave of court, and except as provided in paragraph (c) of this Rule, reasonable notice shall be in writing and served at least seven days before the hearing. Counsel of record shall make a reasonable effort to confer before giving notice of a motion to resolve the subject of the motion **and to determine a mutually agreeable hearing date and time.**"

**CERTIFICATE OF SERVICE:** Pursuant to Rule 4:15 (e), a motions pleading shall be deemed served when it is actually received by, or in the office of, counsel of record through delivery, mailing, or facsimile transmission; not when it is mailed or sent.

## INFORMATION FOR MOVING PARTY

**CONCILIATION PROGRAM:** The Fairfax Circuit Court strongly encourages use of conciliation procedures to resolve motions. The Fairfax Bar Association's Conciliation Program conducts conciliation without charge by experienced litigators, who meet in person or by telephone with all interested parties. To request conciliation, fax a Request for Conciliation form to the Fax Hotline, (703) 273-1274; e-mail a request for conciliation to: ffxconciliation@aol.com; or leave a voice mail message at (703) 627-1228. You will be contacted before the hearing date by a representative of the Conciliation Program.